**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MAC FUNDING CORPORATION,　　　　　)
a Delaware corporation,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　Case No. 16-cv-02490
　　　v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　Judge Edmond E. Chang
SHERYL ANN COX d/b/a　　　　　　　　)
COX MACHINE & TOOL,　　　　　　　　)　　Magistrate Judge Michael T. Mason
an Oklahoma citizen,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　　)

**MOTION TO REINSTATE AND TO ENTER JUDGMENT**

Plaintiff, MAC FUNDING CORPORATION ("MAC"), by and through its attorneys, Rein F. Krammer of Masuda, Funai, Eifert & Mitchell, Ltd., hereby moves to reinstate this cause and to enter judgment pursuant to the Agreed Order entered into in this cause, and provides as follows:

1.　　　　On or about May 18, 2016, this Court entered an Agreed Order of Dismissal [Dkt. No. 20 (the "Agreed Order"). The Court retained jurisdiction under the Agreed Order to enforce the terms of the Agreed Order and the Settlement Agreement (as defined therein). [Dkt. No. 20, Para. 4].

2.　　　　Pursuant to the terms of the subject Agreed Order, Defendant, SHERYL ANN COX d/b/a COX MACHINE & TOOL ("Cox") was to make monthly installment payments to plaintiff MAC pursuant to the payment provisions contained within paragraph 1 of the Agreed Order.

3.     However, contrary to the provisions of paragraph 1 of the Agreed Order, Defendant, Cox has failed to make the required installment payments.  Past due and owing under the Agreed Order are the monthly installments from September 15, 2016 through September 15, 2017.  In addition, Cox has failed to provide the required proof of insurance on the Subject Equipment or to return possession of the Subject Equipment to MAC.

4.     As a result of such failures, MAC issued to Cox demand letters, pursuant to the Agreed Order, requesting a cure of the defaults.  (See Exhibit "A").

5.     Despite the issuance of the foregoing demand letters, Cox has failed to cure such defaults or breaches.

6.     As a result of the failure to cure, MAC is causing to be filed herewith the Declaration of Ms. Victoria Morales, Credit Analyst of MAC (See Exhibit "B"), setting forth the fact of such defaults or breaches, and the remaining balance due and owing from Cox.

7.     Pursuant to the provisions of paragraph 2 of the Agreed Order, as a result of such breaches, and the filing of the aforementioned Declaration, MAC is entitled to judgment against Cox, for the amounts and relief set forth in the proposed Judgment Order, a copy of which is attached hereto as Exhibit "C."

**WHEREFORE**, Plaintiff MAC FUNDING CORPORATION prays for judgment against

Defendant, SHERYL ANN COX d/b/a COX MACHINE & TOOL as set forth in the proposed

Judgment Order attached hereto as Exhibit "C," and for other relief as may be just and fair.


Dated: September 19, 2017

**MAC FUNDING CORPORATION**

By:     /s/ Rein F. Krammer          
              One of its Attorneys

Rein F. Krammer, Esq.
MASUDA, FUNAI, EIFERT & MITCHELL, LTD.
Attorney for Plaintiff
203 N. LaSalle Street, Suite 2500
Chicago, Illinois 60601-1262
(312) 245-7500
(312) 245-7467

RFK:cmp
N:\SYS08\6309\Lit\10198 Motion to Reinstate and to Enter Judgment Final.docx



EXHIBIT "A"

Rein F. Krammer
Attorney at Law
rkrammer@masudafunai.com
tel 312.245.7531
fax 312.245.7467

February 3, 2016

**Via Federal Express Mail - 2nd Day Delivery**

Ms. Sheryl Ann Cox d/b/a Cox Machine & Tool
5301 SW 25th Street
Oklahoma City, OK 73128

Re:    **MAC Funding Corporation**
       **Loan No. : 40002378**

Dear Ms. Cox:

This firm represents MAC Funding Corporation ("MAC Funding"). As you know, Sheryl Ann Cox d/b/a Cox Machine & Tool ("Cox") and MAC Funding entered into Loan No. 40002378 which includes a certain Note and Security Agreement, each numbered 40002378 and related documents (the "Financing Agreement") relating to one (1) Mitsubishi brand Waterjet system Model MWX3-612 together with all standard features and optional accessories, and other items further described in the Financing Agreement (collectively, the "Equipment").

You have defaulted in your payments to MAC Funding under the Financing Agreement. As of February 3, 2016, there is past due and owing to MAC Funding under the Financing Agreement the sum of $17,576.27 (inclusive of principal, accrued interest, and late charges but exclusive of attorneys' fees and other costs). You have also failed to provide adequate proof of insurance on the Equipment.

We hereby demand that you pursuant to the Financing Agreement and your personal Guaranty executed in conjunction therewith make immediate payment of $17,576.27 to MAC Funding and provide adequate proof of insurance. Unless payment is made within three (3) business days and said proof of insurance is provided, please be advised that MAC Funding will take such action as may be necessary to protect its interests, including, but not limited to, the filing of an action against you personally for money damages for the full accelerated amount of $131,664.81 as of February 3, 2016 (inclusive of accelerated principal, past due principal and interest, pre-payment penalty, and late fees

but exclusive of attorneys' fees and other costs) pursuant to the Financing Agreement and Guaranty, and for the retaking of possession of the Equipment. Interest continues to accrue at $17.96 per day.

Your immediate response is required. Please contact the undersigned with any questions you may have relative to this matter.

Very truly yours,

**Masuda, Funai, Eifert & Mitchell, Ltd.**

Rein F. Krammer

RFK:emp
N:\SYS08\6309\Letters\101980001.docx

Rein F. Krammer
Attorney at Law
rkrammer@masudafunai.com
tel 312.245.7531
fax 312.245.7467

December 1, 2016

**Via Federal Express Mail - 2nd Day Delivery**

Ms. Sheryl Ann Cox d/b/a Cox Machine & Tool
5301 SW 25th Street
Oklahoma City, OK 73128

Re:    **MAC Funding Corporation**
      **Loan No. : 40002378**

Dear Ms. Cox:

As you know, this firm represents MAC Funding Corporation ("MAC Funding"). Sheryl Ann Cox d/b/a Cox Machine & Tool ("Cox") and MAC Funding entered into Loan No. 40002378 which includes a certain Note and Security Agreement, each numbered 40002378 and related documents (the "Financing Agreement") relating to one (1) Mitsubishi brand Waterjet system Model MWX3-612 together with all standard features and optional accessories, and other items further described in the Financing Agreement (collectively, the "Equipment"). As part of prior litigation over the Financing Agreement and Equipment, the parties also entered into a certain Settlement Agreement dated May 16, 2016 and an Agreed Order of Dismissal ("Agreed Order") on May 18, 2016. Pursuant to the Settlement Agreement and Agreed Order, MAC Funding is permitted upon a default to immediately reopen the litigation in order to seek all of its remedies including a judgment against you personally for its damages and immediate repossession of the Equipment through law enforcement officials or otherwise.

You have defaulted in your payments to MAC Funding under the Financing Agreement, Settlement Agreement, and Agreed Order. As of November 30, 2016, there is past due and owing to MAC Funding under the Financing Agreement the sum of $11,845.22 (inclusive of principal, accrued interest, and late charges but exclusive of attorneys' fees and other costs).

We hereby demand that you pursuant to the Financing Agreement, Settlement Agreement, Agreed Order, and your personal Guaranty executed in conjunction therewith make immediate payment of

$11,845.22 to MAC Funding. Unless payment is made within three (3) business days, please be advised that MAC Funding will take such action as may be necessary to protect its interests, including, but not limited to, the refiling of the action against you personally for money damages for the full accelerated amount of $125,904.66 as of November 30, 2016 (inclusive of accelerated principal, past due principal and interest, pre-payment penalty, and late fees but exclusive of attorneys' fees and other costs) pursuant to the Financing Agreement, Guaranty, Settlement Agreement and Agreed Order and for the retaking of possession of the Equipment.

Your immediate response is required. Please contact the undersigned with any questions you may have relative to this matter.

Very truly yours,

**Masuda, Funai, Eifert & Mitchell, Ltd.**

Rein F. Krammer

RFK:cmp
N:\SYS08\6309\Letters\101980002.docx

Rein F. Krammer
Attorney at Law
rkrammer@masudafunai.com
tel 312.245.7531
fax 312.245.7467

May 1, 2017

**Via Federal Express Mail - 2nd Day Delivery**

Ms. Sheryl Ann Cox d/b/a Cox Machine & Tool
5301 SW 25th Street
Oklahoma City, OK 73128

Re:     **MAC Funding Corporation**
        **Loan No. :  40002378**

Dear Ms. Cox:

As you know, this firm represents MAC Funding Corporation ("MAC Funding").  Sheryl Ann Cox
d/b/a Cox Machine & Tool ("Cox") and MAC Funding entered into Loan No. 40002378 which
includes a certain Note and Security Agreement, each numbered 40002378 and related documents
(the "Financing Agreement") relating to one (1) Mitsubishi brand Waterjet system Model MWX3-612
together with all standard features and optional accessories, and other items further described in the
Financing Agreement (collectively, the "Equipment").  As part of prior litigation over the Financing
Agreement and Equipment, the parties also entered into a certain Settlement Agreement dated May
16, 2016 and an Agreed Order of Dismissal ("Agreed Order") on May 18, 2016.  Pursuant to the
Settlement Agreement and Agreed Order, MAC Funding is permitted upon a default to immediately
reopen the litigation in order to seek all of its remedies including a judgment against you personally
for its damages and immediate repossession of the Equipment through law enforcement officials or
otherwise.

You have defaulted in your payments to MAC Funding under the Financing Agreement, Settlement
Agreement, and Agreed Order.  MAC Funding has given you every opportunity to correct these
issues.  As of April 27, 2017, there is past due and owing to MAC Funding under the Financing
Agreement the sum of $30,979.82 (inclusive of principal, accrued interest, and late charges but
exclusive of attorneys' fees and other costs).

We hereby demand that you pursuant to the Financing Agreement, Settlement Agreement, Agreed Order, and your personal Guaranty make immediate payment of $30,979.82 to MAC Funding. Unless payment is made within three (3) business days, please be advised that MAC Funding will take such action as may be necessary to protect its interests, including, but not limited to, the refiling of the action against you personally for money damages for the full accelerated amount of $125,904.66 as of April 27, 2017 (inclusive of accelerated principal, past due principal and interest, pre-payment penalty, and late fees but exclusive of attorneys' fees and other costs) pursuant to the Financing Agreement, Guaranty, Settlement Agreement and Agreed Order and for the retaking of possession of the Equipment.

Your immediate response is required. Please contact the undersigned with any questions you may have relative to this matter.

Very truly yours,

**Masuda, Funai, Eifert & Mitchell, Ltd.**

Rein F. Krammer

RFK:cmp
N:\SYS08\6309\Letters\101980004.docx



EXHIBIT "B"

MAC FUNDING CORPORATION,  )
a Delaware corporation,  )
   )
       Plaintiff,  )
   )   Case No. 16-cv-02490
     v.  )
   )   Judge Edmond E. Chang
SHERYL ANN COX d/b/a  )
COX MACHINE & TOOL,  )   Magistrate Judge Michael T. Mason
an Oklahoma citizen,  )
   )
       Defendant.  )

## DECLARATION OF VICTORIA MORALES

I, Victoria Morales, declare under penalty of perjury as follows:

1.     I am a Credit Analyst for MAC FUNDING CORPORATION ("MAC"). I am one of the custodians of the books and records of MAC as they pertain to the accounts relating to SHERYL ANN COX d/b/a COX MACHINE & TOOL ("Cox").

2.     Pursuant to the books and records of MAC, Cox has failed to make the September 15, 2016 through September 15, 2017 payments due under the Agreed Order dated on or about May 18, 2016 (the "Agreed Order"), to provide proof of insurance for the equipment that is the subject of the Subject Lease (as defined hereinafter) (the "Subject Equipment") or return possession of the Subject Equipment to MAC.

3.     As a result thereof, MAC and MAC's counsel has issued, pursuant to my direction, demand letters to Cox demanding that she cure her defaults under the Agreed Order.

4.     Notwithstanding the demand letters, the past due amount has not been cured by Cox. In addition, she has failed to provide adequate proof of insurance or return possession of the Subject Equipment to MAC.

5.     There remains due and owing from Cox, pursuant to the provisions of the Agreed Order, the sum of $145,510.18 as of September 19, 2017 after acceleration of all amounts due, as follows:

| | |
|---|---|
| Pay-off Amount (Principal, Accrued Interest and Late Fees) | $132,235.35 |
| Plus: Attorney's Fees and Costs | $13,274.83 |
| **TOTAL AS TO THE FINANCE AGREEMENT:** | **$145,510.18** |

As a result, $145,510.18 is due and owing from Cox under the Agreed Order as of September 19, 2017.

I declare under a penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Victoria Morales

Rein F. Krammer, Esq.
MASUDA, FUNAI, EIFERT & MITCHELL, LTD.
Attorney for Plaintiff
203 N. LaSalle Street, Suite 2500
Chicago, Illinois 60601-1262
(312) 245-7500
(312) 245-7467

RFK:cmp
N:\SYS08\6309\Lit\10198 Declaration of Victoria Morales.doc



EXHIBIT "C"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MAC FUNDING CORPORATION,     )
a Delaware corporation,     )
     )
     Plaintiff,     )
     )     Case No. 16-cv-02490
     v.     )
     )     Judge Edmond E. Chang
SHERYL ANN COX d/b/a     )
COX MACHINE & TOOL,     )     Magistrate Judge Michael T. Mason
an Oklahoma citizen,     )
     )
     Defendant.     )

## <u>JUDGMENT ORDER</u>

This cause comes to be heard upon the Motion of Plaintiff, MAC FUNDING CORPORATION ("MAC"), to reinstate and to enter judgment and the declaration in support of Ms. Victoria Morales, due notice having been given; and the Court finding that Defendant, SHERYL ANN COX d/b/a COX MACHINE & TOOL ("Cox") has failed to comply with, and is in breach and default under the provisions of the Agreed Order of Dismissal entered in this cause on May 18, 2016 (the "Agreed Order"), and that Cox has failed to cure such breach and default after being given notice and an opportunity to cure, as provided in such Agreed Order;

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.    This matter is hereby reinstated; and judgment is hereby entered in favor of plaintiff and against SHERYL ANN COX d/b/a COX MACHINE TOOL, in the amount of $145,510.18.

2.     Defendant SHERYL ANN COX d/b/a COX MACHINE TOOL and her agents shall immediately turn over to plaintiff the Mitsubishi Water Jet System, Model MWX3-612, and the other items of equipment that are the subject of the Finance Agreement (the "MAC Equipment") and reasonably cooperate with Plaintiff and its agents in allowing Plaintiff to repossess the MAC Equipment.  See Exhibit "1" attached hereto for a detailed description of the MAC Equipment.

3.     The U.S. Marshall or any County Sheriff or other appropriate government official are authorized and directed to enter the premises of SHERYL ANN COX d/b/a COX MACHINE TOOL, including, but not limited to, Cox's facility at 5301 SW 25th Street, Oklahoma City, Oklahoma 73128, confiscate, and take possession of the subject MAC Equipment, and turn such MAC Equipment over to the possession of the Plaintiff.

**ENTER:**

_____
Judge Edmond E. Chang of the U.S. District Court

_____
Dated

Rein F. Krammer, Esq.
MASUDA, FUNAI, EIFERT & MITCHELL, LTD.
Attorney for Plaintiff
203 N. LaSalle Street, Suite 2500
Chicago, Illinois 60601-1262
(312) 245-7500
(312) 245-7467

N:\SYS08\6309\Lit\10198 Judgment Order Final.docx



EXHIBIT "1"

# SECURITY AGREEMENT

**LOAN NO. 40002378**

This Security Agreement ("Agreement") is made as of 8/28/2013 by and between MAC Funding Corporation ("Secured Party"), a Delaware corporation with its principal place of business at 1500 Michael Drive, Wood Dale, Illinois 60191, and SHERYL ANN COX (d/b/a COX MACHINE & TOOL), a Ole Sole Proprietor with its principal place of business at 5301 SW 25TH STREET, OKLAHOMA CITY, OK 7312B ("Debtor").

## GRANT OF SECURITY INTEREST

1.1    To secure the Indebtedness (as hereinafter defined) owing from Debtor to Secured Party from time to time and the prompt and full performance by Debtor of all provisions to be performed and/or payments to be made by Debtor under this Agreement and that certain note of even date herewith in the principal amount of **$192,200.00** (the "Note"), Debtor hereby grants to Secured Party a continuing security interest in and to all of the equipment, goods, property, rights and other collateral described in Schedule "A" attached hereto and all proceeds (as now or hereafter defined by the Illinois Uniform Commercial Code (the "Code")) of any of the foregoing, including, but not limited to, insurance proceeds and sale proceeds. All such personal property is hereinafter sometimes individually and collectively referred to as "Collateral". To the extent the funds evidenced by the Note have been loaned to Debtor to enable Debtor to purchase and/or acquire the Collateral, the security interest granted to Secured Party in the Collateral is and shall remain a purchase money security interest. Debtor hereby authorizes and instructs Secured Party to disburse/pay the loan proceeds directly to the seller of the Collateral in payment of the purchase price (or portion thereof) for the Collateral. "Indebtedness" herein means all indebtedness, financial obligations and payments due and owing under the Note and all other notes, loans, advances and other financial accommodations of any nature made by Secured Party to Debtor and all other obligations and liabilities of Debtor to Secured Party, whether now existing or hereafter incurred or created, voluntary or involuntary, due or not due, absolute or contingent, and/or whether incurred directly or indirectly.

1.2    Debtor shall execute and deliver to Secured Party all agreements, documents and other written matter (hereinafter "Supplemental Documentation") that Secured Party reasonably may request, in form acceptable to Secured Party, to perfect, further perfect and/or maintain perfection of Secured Party's security interest in and to the Collateral and to consummate the transaction contemplated in or by this Agreement, the Note and any other agreements now existing or hereafter entered into between Secured Party and Debtor. Debtor irrevocably makes, constitutes and appoints Secured Party (and its agents) as Debtor's attorney-in-fact to (a) sign the name of Debtor to the Supplemental Documentation and to authenticate and deliver the Supplemental Documentation to such persons as Secured Party in its absolute discretion may elect, (b) sign on behalf of Debtor such additional documents as may be required to create, amend, extend, continue, maintain or perfect the security interest described herein or otherwise granted to or retained by Secured Party and (c) make any filings or registrations with governmental officials or offices and take such other actions as Secured Party deems appropriate to perfect, amend, continue and/or maintain the perfection of the security interest created hereby or otherwise granted to or retained by Secured Party. Debtor hereby ratifies any prior filings made against Debtor by Secured Party.

1.3    Debtor warrants and represents to Secured Party that (a) Secured Party shall have a first priority position in the Collateral; (b) Debtor has not granted and will not grant any security interest in any of the Collateral to any person other than Secured Party; and (c) the office and/or location where Debtor keeps the Collateral and Debtor's records concerning the Collateral, is Debtor's principal place of business specified above, and Debtor shall not remove such records and/or the Collateral therefrom. Secured Party shall have the right during Debtor's usual business hours to inspect the Collateral (and the premises upon which it is located) and inspect and copy all related records and to verify the amount and condition thereof or any other matter relating to the Collateral.

1.4    Debtor shall receive, as the property of Secured Party and as trustee for Secured Party, all monies, checks, notes, drafts and all other payments constituting proceeds of Collateral which come into the possession or control of Debtor (or any of its shareholders, directors, officers, members, managers, employees, agents or those persons acting for or in concert with Debtor) and immediately upon receipt thereof, remit the same in kind, to Secured Party. In addition, to the extent that any shareholder, director, officer, member, manager, employee, agent or guarantor of Debtor has subordinated its rights to payment of any funds from Debtor to the rights and interests of Secured Party therein, Debtor shall hold any such funds otherwise payable to such third party, as trustee, for the sole and exclusive benefit of Secured Party and Debtor shall not disburse the same (except to Secured Party).

1.5    Secured Party, at any time Debtor is in default, in Secured Party's sole discretion, may take control of, and may endorse Debtor's name to, any proceeds described in paragraph 1.4 above. For purposes of this paragraph, Debtor irrevocably makes, constitutes and appoints Secured Party (and its agents) as Debtor's attorney-in-fact with power to take such actions.

1.6    Secured Party in its sole discretion, without waiving or releasing any obligation, liability or default of Debtor under this Agreement, may, but shall be under no obligation to pay (and/or acquire or accept any assignment of) any security interest, lien, or encumbrance) any claim asserted by any person against the Collateral. All sums paid by Secured Party in respect thereof and all costs, fees and expenses, including reasonable attorneys' fees, court costs, incurred by Secured Party on account thereof shall be a part of the Indebtedness.

1.7    Debtor shall not have any right to sell or otherwise transfer the Collateral unless and until Secured Party has been paid in full the Indebtedness.

## WARRANTIES AND REPRESENTATIONS

2.1    Debtor warrants and represents that (i) Debtor is an individual, organization, or registered organization as indicated in the introductory paragraph above; (ii) if Debtor is a registered organization, Debtor's state of organization is the state set forth in the introductory paragraph above; (iii) Debtor's place of business

(or chief executive office, if Debtor has more than one place of net business) is set forth in the introductory paragraph above; (iv) if Debtor is an individual, Debtor's principal residential address is set forth in the introductory paragraph above; and (v) Debtor shall not change its form of business or organization, change or in any way amend or alter its legal name or change its residential address, place of business or chief executive office without providing Secured Party at least thirty (30) days prior written notice thereof.

2.2    (a) So long as Debtor is not in default under the Note and/or this Agreement, Debtor shall be entitled to the possession and use of the Collateral. Debtor shall not remove the Collateral from the location set forth in paragraph 1.3 or part with possession or control of the Collateral without prior written consent of Secured Party.

(b) Debtor, at its sole expense, will (i) keep the Collateral in good repair, condition, and working order, (ii) in compliance with all applicable legal requirements and (iii) meet standards sufficient to satisfy any relevant manufacturer's requirement for warranty. Debtor will make no alterations, additions or improvements to the Collateral that are permanent. Any additions or improvements will immediately become subject to this Agreement. Debtor assumes all risk of loss or damage to the Collateral from any cause whatsoever. Debtor will immediately notify Secured Party of any such loss or damage in writing, and Debtor will, at Secured Party's sole option, (a) make all repairs to place the same in good repair, condition and working order, or (b) pay to Secured Party the amount of the balance of the Note, plus all other amounts payable to Secured Party hereunder. The total or partial destruction of the Collateral, or total or partial loss of use or possession thereof to Debtor, shall not relieve Debtor from the duty to pay all amounts due under the Note, as and when due

(c) Debtor, at its sole cost, shall until the Indebtedness is paid in full (i) keep the Collateral insured for its full insurable value against loss or damage by fire, and all other hazards and risks ordinarily insured against by other owners/users of such properties and similar businesses; and (ii) maintain general liability insurance covering liability for bodily injury, including, but not limited to death and property damage resulting from the purchase, ownership, leasing, financing, maintenance, use, operation or return of the Collateral with a combined single limit of not less than $2,000,000 per occurrence. All such insurance shall be in form and in amounts (and with insurers) as may be reasonably satisfactory to Secured Party. Debtor shall deliver to Secured Party the original (or certified copy) of such policy of insurance, or certificate of insurance, and evidence of payment of all premiums for each such policy. Such insurance shall contain an endorsement, in form and substance acceptable to Secured Party, showing loss payable to Secured Party as lender loss payee and provide that all such insurance companies will give Secured Party at least 30 days prior written notice before any such insurance shall be altered or canceled and that no act or default of Debtor or any other person shall affect the right of Secured Party to recover under such policy or policies of insurance. The proceeds of insurance payable as a result of loss or damage to the Collateral will be applied to Debtor's obligations hereunder and under the Note upon receipt by Secured Party. In the event of any default hereunder by Debtor, Debtor irrevocably appoints Secured Party as Debtor's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks, or drafts received in payment for loss or damage under any insurance

policy. In the event Debtor shall fail to obtain any of the insurance required above or to pay any premium in whole or in part relating thereto, Secured Party, without waiving or releasing any obligation of, or event of default by, Debtor hereunder, may (but shall be under no obligation to do so) obtain such policies of insurance, pay such premiums and take such actions with respect thereto which Secured Party deems advisable. All sums disbursed by Secured Party, including reasonable attorneys' fees, court costs, and other charges relating thereto, shall be part of the Indebtedness, and shall be payable to Secured Party by Debtor on demand.

2.3    Debtor shall keep the Collateral free and clear of all levies, liens, and encumbrances of any nature whatsoever, and will be responsible for and will promptly pay, when due, and indemnify Secured Party against, all federal, state, county, city, municipal and/or other governmental taxes, levies, assessments, charges, liens, claims or encumbrances of any nature whatsoever upon the Collateral and Debtor's business, which may now or hereafter be imposed upon the ownership, leasing, financing, rental, sale, purchase, possession or use of the Collateral whether assessed to Debtor or Secured Party, and all obligations under any leases and licenses to which it is a party (collectively the "Charges"). Debtor will file all personal property tax returns covering the Collateral and will pay all personal property taxes assessed thereon. Debtor will provide Secured Party with copies of all such personal property tax returns, together with evidence of payment thereof upon demand. Where applicable, Debtor shall provide Secured Party with a tax exemption certificate acceptable to the taxing authorities. In the event Debtor, shall fail to pay any Charge or to obtain discharges thereof, Secured Party may, without waiving or releasing any obligations or liability of Debtor hereunder, or any Event of Default, in its sole discretion make such payment, or any part thereof, or obtain discharges and take any other action with respect thereto which Secured Party deems advisable. All sums so paid by Secured Party and any, reasonable attorneys' fees, court costs and other charges relating thereto shall be part of the Indebtedness and shall be payable to Secured Party on demand.

2.4    Debtor shall cause its financial statements to be furnished to Secured Party along with such other data and information (financial or otherwise) as Secured Party may request relating to the Collateral, Debtor's financial condition, results of operations and/or any third party guaranteeing any portion of the Indebtedness.   Debtor acknowledges and agrees that Secured Party may disclose (i) such information; (ii) Debtor's account status (including whether Debtor is in default herein or under the Note), and (iii) any other information, confidential or otherwise, which Debtor has or may provide to Lender (including without limitation as part of any credit application process) to: (a) any credit bureaus, credit agencies, and/or collection agencies, (b) third parties retained/enlisted by Lender to assist Lender with the collection of any amounts due and owing to Lender or any other breaches of the Note or the Agreement, and (c) Lender's officers, directors, employees, agents, related and affiliated companies, and representatives.  Debtor hereby waives and releases any and all claims of any nature whatsoever relating to the disclosure and/or sharing of any of the foregoing information.

2.5    The Collateral shall at all times remain personal property, notwithstanding that the Collateral or any part thereof may be or become in any manner affixed or attached to or embedded in, or permanently resting upon any real property. Any

8

fixture filings undertaken by Secured Party shall not be deemed to constitute an admission that the Collateral has become a fixture.

2.6   SECURED PARTY MAKES NO WARRANTIES WHATSOEVER RELATING TO THE COLLATERAL, OR ANY PORTION THEREOF INCLUDING THE SYSTEM (AS DEFINED IN PARAGRAPH 4.1), AND HEREBY DISCLAIMS ANY AND ALL WARRANTIES OF ANY NATURE WHATSOEVER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR USE, VALUE, TITLE, COMPLIANCE WITH SPECIFICATIONS, DESIGN, CONDITION, CAPACITY, DURABILITY, QUALITY OF MATERIAL OR WORKMANSHIP, CONFORMITY OF ANY DESCRIPTION AND/OR PATENT INFRINGEMENT. SECURED PARTY IS NOT RESPONSIBLE FOR ANY REPAIRS OR SERVICE TO THE COLLATERAL OR ANY PORTION THEREOF, DEFECTS THEREIN OR FAILURES IN THE OPERATION THEREOF INCLUDING THE SYSTEM. SECURED PARTY SHALL NOT BE LIABLE FOR ANY DAMAGES WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE WHATSOEVER, INCLUDING WITHOUT LIMITATION THOSE WHICH MAY ARISE WITH RESPECT TO PARAGRAPH 4.1, ALL OF WHICH ARE HEREBY EXPRESSLY WAIVED. DEBTOR ACKNOWLEDGES AND AGREES THAT (A) SECURED PARTY DID NOT SELECT, MANUFACTURE OR SUPPLY THE COLLATERAL OR ANY PORTION THEREOF; (B) SECURED PARTY IS ONLY FINANCING THE COLLATERAL, AND (C) DEBTOR HAS MADE THE SELECTION OF THE SUPPLIER(S) OF THE COLLATERAL AND EACH ITEM OF COLLATERAL BASED ON ITS OWN JUDGMENT AND DEBTOR DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS, WARRANTIES OR REPRESENTATIONS MADE OR ALLEGEDLY MADE BY SECURED PARTY. DEBTOR IS AND SHALL BE SOLELY RESPONSIBLE TO ARRANGE FOR AND EFFECT THE SHIPMENT, DELIVERY AND INSTALLATION OF THE COLLATERAL. DEBTOR HAS ACCEPTED AND HEREBY ACCEPTS THE COLLATERAL FOR THE PURPOSES OF THIS AGREEMENT AND THE NOTE ON AN "AS IS, WHERE IS, AND WITH ALL FAULTS" BASIS. IN NO EVENT WILL SECURED PARTY BE LIABLE TO DEBTOR FOR ANY LOSS OR DAMAGE WHATSOEVER ARISING FROM OR IN CONNECTION WITH THE SHIPMENT, DELIVERY, INSTALLATION OR OPERATION OF THE COLLATERAL. THE SYSTEM OR ANY DELAY OR FAILURE TO PROVIDE CODES FOR THE SYSTEM OR ANY DELAY OR FAILURE IN CONNECTION WITH THE COLLATERAL. DEBTOR'S PAYMENT OBLIGATIONS TO SECURED PARTY UNDER THE NOTE AND OTHERWISE EXISTING SHALL BE IRREVOCABLE, ABSOLUTE AND UNCONDITIONAL, AND WILL NOT BE SUBJECT TO ANY ABATEMENT, DEFENSE, SETOFF, COUNTERCLAIM OR RECOUPMENT WHATSOEVER FOR ANY REASON (INCLUDING, BUT NOT LIMITED TO, ANY INABILITY TO USE OR OPERATE, OR ANY LIMITATION ON THE USE OR OPERATION OF, THE COLLATERAL). DEBTOR WAIVES ANY AND ALL CLAIMS AGAINST SECURED PARTY AND THE MANUFACTURERS, SELLERS AND SUPPLIERS OF

THE COLLATERAL FOR PUNITIVE DAMAGES RELATING TO THE COLLATERAL INCLUDING THE SYSTEM AND THE PERFORMANCE THEREOF, AND THE RELATIONSHIP OF THE PARTIES AND ANY OTHER MATTERS RELATED THERETO.

2.7   Debtor will promptly notify Secured Party in writing of any event which affects the value of the Collateral, the ability of Debtor or Secured Party to dispose of the Collateral, or the rights and remedies of Secured Party in relation thereto.

## DEFAULT

3.1   The occurrence of any of the following shall constitute a default ("Event of Default") by Debtor under this Agreement: (a) if Debtor fails or neglects to perform any provision, condition, warranty or representation contained in this Agreement, the Note or any other agreements with Secured Party; (b) if any statement (including any financial statements of Debtor or any guarantors), report or certificate made or delivered by Debtor, or any of its officers, employees or agents, to Secured Party is not true and correct; (c) if Debtor fails to pay any of the Indebtedness to Secured Party, when due or declared due and payable or Debtor becomes insolvent or is otherwise unable to pay its debts as they mature; (d) if the Collateral is attached, seized, subjected to a writ or distress warrant, or is levied upon, or comes within the possession of any receiver, trustee, custodian, or assignee for the benefit of creditors; (e) if Debtor removes, sells, transfers, parts with possession or control of the Collateral or any portion thereof; (f) if any petition, case or proceeding is filed by or against Debtor for its reorganization, dissolution or liquidation under any section or chapter of the Bankruptcy Reform Act of 1978, as amended, or any similar law or regulation; (g) if Debtor or a guarantor of Debtor declares itself to be insolvent or admits in writing its inability to pay its debts generally as they become due, or makes an assignment for the benefit of its creditors, or any case or proceeding is filed by Debtor for its dissolution or liquidation, or an order is made or resolution passed for the winding up of the Debtor; (h) if Debtor is enjoined, restrained, or in any way prevented by court or administrative order from conducting all or any material part of its business affairs and such injunction or restraint is not dismissed or stayed within ten (10) days after the entry or filing thereof; (i) if an application is made by any person other than Debtor for the appointment of a receiver, trustee, or custodian for the Collateral and the same is not dismissed within ten (10) days after the application therefor; (j) if a notice of lien, levy or assessment is filed of record with respect to the Collateral by any governmental agency or authority, or if any taxes or debts, owing at any time becomes a lien or encumbrance upon the Collateral and the same is not released within ten (10) days after the same becomes a lien or encumbrance; (k) the loss or suspension of any licenses or permits required to operate Debtor's business as presently conducted; (l) the occurrence of a default or an event of default under any other agreement between Secured Party and Debtor; or (m) Debtor ceases or threatens to cease to carry on all or a substantial part of its business or makes or threatens to make a sale of all or substantially all of its assets.

3.2   Upon an Event of Default, Secured Party, in its sole discretion, may: (a) declare any and all Indebtedness secured hereby immediately due and payable; (b) exercise any one or more of the rights and remedies accruing to a secured party, and enforce this Agreement and the security interest granted herein under the Code and any other applicable law; (c) require Debtor immediately upon demand by Secured Party, to assemble the

9

Collateral and make it available to Secured Party at Debtor's principal place of business; (d) enter, with or without process of law and without breach of the peace, any premises where the Collateral or the records of Debtor related thereto are or may be located, and without charge or liability to Secured Party therefor, seize and remove the Collateral (and copies of Debtor's records related to the Collateral) from said premises, and Debtor hereby grants Secured Party a security interest in said records; (e) disable or render the Collateral unusable, whether electronically or by any other means available to Secured Party, without any liability to Debtor relative thereto, (f) preserve, protect and maintain the Collateral and make such replacements and repairs and additions to the Collateral as the Secured Party deems necessary; and/or (g) sell or otherwise dispose of the Collateral at public or private sale for cash or credit, provided, however, that Debtor shall be credited with the net proceeds of such sale only when such proceeds are actually received by Secured Party. Secured Party's rights and remedies under this Agreement and any other agreement are cumulative and non-exclusive.

3.3    In the event Debtor fails to perform any of its obligations or liabilities under this Agreement, or any other agreement with Secured Party, no remedy at law will provide adequate relief to Secured Party, and accordingly Secured Party shall be entitled to temporary and permanent injunctive relief (including, but not limited to, mandatory injunctive relief for the return of the Collateral) as may be provided by law in any such case without the necessity of proving actual damages.

3.4    Any notice required to be given by Secured Party of a sale, lease, other disposition of the Collateral or any other intended action by Secured Party, sent by registered mail, postage prepaid and duly addressed to Debtor at the address specified at the beginning of this Agreement not less than ten (10) days prior to such proposed action, shall constitute commercially reasonable and fair notice to Debtor thereof.

3.5    Secured Party's right to possession shall not be affected or obviated by reason of any claims asserted by Debtor of any nature whatsoever, including specifically, but not limited to, any defense of setoff, abatement, recoupment or any claim or counterclaim, including, but not limited to, any claim of breach of warranty or contract. Secured Party may require Debtor to assemble the Collateral and make it available for removal by Secured Party at a place designated by Secured Party.

## TIME INTERLOCK SYSTEM

4.1    The Collateral is equipped with a Time Interlock System (the "System") which is a software program that periodically requires a computer code to be inserted into the Collateral to enable the Collateral to continue to operate. If the code is not input on a timely basis, the Collateral will no longer function and will cease operations ("Timeout"). With respect to waterjets, the code must be input on or before 7 days from the date the waterjet is scheduled to Timeout. With respect to lasers, EDMs and milling machines, the code must be input on or before 15 days from the date the machine is scheduled to Timeout. Accordingly, in order to assure continuous operation of the Collateral, **it is essential that Debtor contact Secured Party to obtain the appropriate code or codes at least once a month.** Debtor should allow at least 20 days lead time prior to the date the Collateral is scheduled to Timeout to enable Secured Party to

process Debtor's request. Upon receipt of Debtor's request, Secured Party will check to determine whether Debtor is current in the payment of all amounts required to be made under and pursuant to the Note, this Security Agreement or any other agreement entered into between Debtor and Secured Party. If Debtor is current in the payment of all such amounts, Secured Party will provide Debtor with the appropriate code to be inserted into the Collateral to continue operation of the Collateral for an additional period of time. If Debtor is delinquent in the payment of any such amounts, Secured Party is not required to, and Secured Party shall not, provide Debtor with any further additional code(s) until such time as Secured Party confirms that Debtor's account has been brought current. Debtor hereby acknowledges and agrees that if Debtor is delinquent in the payment of any amounts due and owing, (a) Debtor will have no right to any continued operation or use of the Collateral, (b) Debtor has other sufficient resources, means and machines available to Debtor to complete any work or projects scheduled for the Collateral and (c) Secured Party's exercise of its rights hereunder or otherwise available at law and/or the failure or refusal to provide any code(s) is commercially reasonable and necessary for the protection of Secured Party's rights in and to the Collateral, the preservation of the Collateral and Secured Party's right to payment. Debtor agrees that it shall not modify, rewire or reprogram the Collateral in any way to attempt to bypass, defeat or otherwise impede the operation of the System.

## GENERAL PROVISIONS

5.1    Secured Party has the sole right to apply and re-apply any payments in such manner as Secured Party may deem advisable, notwithstanding any entry by Secured Party upon its books and records, so long as such application is not contrary to law.

5.2    This Agreement (and the documents referenced herein) constitutes the entire agreement between the parties and supersedes any and all prior agreements, correspondence, quotations, or understandings heretofore relating to the subject matter hereof. There are no other agreements between the parties relative to the Collateral, and no promises, representations or statements relative thereto have been made by Secured Party, except those specifically set forth and made part of this Agreement. This Agreement may not be modified except by an agreement in writing signed by Debtor and Secured Party. Debtor may not sell, assign or transfer this Agreement, the Collateral or any portion thereof without the prior written consent of Secured Party.

5.3    Secured Party's failure to require strict performance by Debtor of any provision of this Agreement, the Note or any other agreement between the parties shall not waive, affect or diminish any right of Secured Party thereafter to demand strict performance herewith or therewith. Any suspension or waiver by Secured Party of an Event of Default by Debtor shall not suspend, waive or affect any other Event of Default by Debtor, whether the same is prior or subsequent thereto and whether of the same or of a different type. None of the undertakings, agreements, warranties, and representations of Debtor contained in this Agreement and no Event of Default by Debtor, shall be deemed to have been suspended or waived by Secured Party unless such suspension or waiver is in writing signed by an officer of Secured Party.

5.4    The terms and conditions of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Agreement, the Note or

any other agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, the Note and any other agreement and the application of such provision to other persons or circumstances, will not be affected thereby, and the provisions of this Agreement, the Note and any other agreement shall be severable in any such instance.

5.5   This Agreement shall be binding upon and inure to the benefit of the successors and permitted assigns of Debtor and Secured Party. This provision, however, shall not be deemed to modify paragraph 5.2 hereof.

5.6   Except as otherwise provided in this Agreement and except as otherwise provided in any other agreement by specific reference to the applicable provision of this Agreement, if any provision contained in this Agreement is in conflict with, or inconsistent with, any provision of any other agreement, the provisions of this Agreement shall control and govern.

5.7   Except to the extent provided to the contrary in this Agreement, the Note and in any other agreements, no termination or cancellation (regardless of cause or procedure) of this Agreement, the Note or any other agreement shall in any way affect or impair the power, obligations, duties, rights, remedies and/or liabilities of Debtor or Secured Party in any way or respect relating to (i) any transaction or event occurring prior to such termination or cancellation, (ii) the Collateral and/or (iii) any of the undertakings, agreements, covenants, warranties and representations of Debtor contained in this Agreement, the Note or in the other agreements. All such undertakings, agreements, covenants, warranties and representations shall survive such termination or cancellation.

5.8   Except as otherwise specifically provided in this Agreement, Debtor waives all notices or demands which Debtor might be entitled to receive with respect to this Agreement by virtue of any applicable statute or law, and waives presentment, demand and protest and notice of presentment, protest, default, dishonor, non-payment, maturity, release, compromise, settlement, extension or renewal of all accounts and guaranties at any time held by Secured Party on which Debtor may in any way be liable.

5.9   Except as to the creation and perfection of the security interest provided for herein, this Security Agreement will be governed and construed in all respects by the internal laws and decisions of the State of Illinois (without reference to conflict of laws principles), including, without limitation, all matters of construction, validity, enforceability, and performance. DEBTOR (I) CONSENTS AT SECURED PARTY'S ELECTION AND WITHOUT LIMITING SECURED PARTY'S RIGHT TO COMMENCE AN ACTION IN ANY OTHER JURISDICTION, TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT (FEDERAL OR STATE) SITUATED IN THE COUNTY OF COOK, STATE OF ILLINOIS; AND (II) WAIVES ANY OBJECTION TO IMPROPER VENUE AND FORUM NON CONVENIENS. DEBTOR HEREBY WAIVES TRIAL BY JURY.  Debtor shall bring any action arising out of this Agreement or the Note only in the federal or state courts located in the County of Cook, State of Illinois. In the event Debtor institutes any action in any court other than a court located in the County of Cook, State of Illinois, Debtor shall pay all of Secured Party's costs in

transferring said proceeding to a court located in the County of Cook, State of Illinois, including, without limitation, reasonable attorneys' fees.

5.10   If at any time Secured Party (a) employs counsel for advice or other representation (i) to represent Secured Party in any litigation, dispute, or proceeding or to commence, defend or intervene or to take any other action in or with respect to any such action (whether instituted by Secured Party, Debtor or any other person) in any way or respect relating to the Collateral, the Note or this Agreement or (ii) in the Event of Default, to enforce any rights of Secured Party against Debtor or any other person which may be obligated to Secured Party by virtue of this Agreement or the Note; (b) takes any action to protect, collect, sell, liquidate or otherwise dispose of the Collateral; and/or (c) attempts to or enforces any of Secured Party's rights or remedies under this Agreement, the reasonable costs and expenses incurred by Secured Party in any manner or way with respect to the foregoing, shall be part of Debtor's liabilities and indebtedness to Secured Party, payable by Debtor to Secured Party on demand, including but not limited to, attorneys' fees, costs and other expenses.

5.11   Debtor releases Secured Party from all causes of action or claims which Debtor may now or hereafter have for any asserted loss or damage to Debtor claimed to be caused by or arising from any failure of Secured Party to protect, enforce or collect in whole or in part any of the Collateral. Secured Party shall not be liable for any misconduct, negligence or misfeasance by Secured Party or any employee or agent for or in the exercise of the rights and remedies conferred upon Secured Party by this Agreement and/or the Note.

5.12   If Secured Party receives any payment on account of Debtor's liabilities, or any proceeds of Collateral are applied on account of Debtor's liabilities, and any such payment(s)/proceeds or any part thereof are subsequently invalidated, declared fraudulent or preferential, set aside, subordinated and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy act, state or federal law, common or equitable cause, then, to the extent of such payment(s) or proceeds received, Debtor's liabilities to Secured Party or part thereof intended to be satisfied shall be revived and continue in full force and effect, as if such payment(s) and/or proceeds had not been received by Secured Party and applied on account of Debtor's liabilities and indebtedness.

5.13   All costs, fees and expenses incurred by Secured Party, or for which Secured Party becomes obligated, in connection with the inspection of the Collateral or any related records (collectively, the "Inspection Costs") shall be paid by Secured Party unless an Event of Default has occurred, in which case all Inspection Costs shall be paid by Debtor (and in such event all such Inspection Costs shall become part of the Indebtedness).

5.14   Secured Party shall not be required to post any bond or other forms of security in connection with any action for the repossession or replevin of, or otherwise relating to, the Collateral.

5.15   Debtor waives any and all claims for punitive damages relating to the Collateral, this Agreement, the Note, the relationship of the parties and any other matters related thereto.

11

5.16   To the extent that any obligation secured hereby cannot validly be secured by a purchase money security interest, it shall nevertheless be secured by the security interest provided herein as a non-purchase money security interest.

5.17   This Agreement shall remain in full force and effect for so long as Debtor remains in any way indebted or obligated to Secured Party pursuant to this Agreement, the Note or under any other agreement between the parties. This Agreement may be terminated only by written agreement signed by Secured Party. The security interests provided herein shall attach upon the signing of this Agreement, value being given and Debtor having rights in the Collateral. There is no agreement between the Debtor and the Secured Party to postpone the time for attachment of the security interests. Any filing(s) undertaken by Secured Party relative hereto may only be terminated/released by the filing by Secured Party of a termination/release statement with the appropriate filing office.

5.18   All rights and remedies herein provided are cumulative and not exclusive of any rights or remedies otherwise provided by law. Any single or partial exercise of any right or remedy shall not preclude the further exercise thereof or the exercise of any other right or remedy. Secured Party may realize upon any security or other collateral provided by Debtor in any order or concurrently with the realization under the Agreement, whether such security or collateral is held by Secured Party at the date of this Agreement or provided at any time in the future. No realization or exercise of any power or right under this Agreement or under any other security shall prejudice any further realization or exercise until all Indebtedness has been fully paid and satisfied. Debtor shall be and remain liable for the payment to Secured Party of any deficiency after realization by Secured Party. Secured Party may grant extensions of time or other indulgences, take and give up security, accept compositions, compromise,

settle, grant releases and discharges, refrain from perfecting or maintaining perfection of security interests and otherwise deal with Debtor, the sureties, and/or guarantors of Debtor and with the Collateral and other security interests as Secured Party may see fit without prejudice to Debtor's liability or Secured Party's right to hold and realize on the security interest.

5.19   All terms not specifically defined herein shall have the definitions and meanings set forth in the Code, as presently in effect, and as hereafter amended from time to time.

5.20   Debtor hereby assumes liability for and agrees to indemnify, and keep harmless Secured Party from and against all liabilities, losses, damages, penalties, claims, suits, costs, expenses, and disbursements, including attorneys' fees, court costs, and legal expenses, of whatever kind or nature imposed on, incurred by, or asserted against Secured Party in any way relating to or arising out of this Agreement or the manufacture, purchase, ownership, delivery, lease, finance, possession, use, operation, condition, return, or other disposition of the Collateral by Secured Party or Debtor, any claim for patent, trademark, or copyright infringement, any claim arising out of strict liability in tort or other products liability theory, and any taxes for which Debtor is responsible hereunder or otherwise. Debtor's indemnities will survive the expiration or termination of this Agreement.

5.21   Debtor acknowledges receiving a copy of this Agreement and waives any right to receive a copy of any financing statement or amendment filed relative hereto.

5.22   Debtor acknowledges having received or having had the opportunity to receive independent legal advice respecting this Agreement and its effect.

**IN WITNESS WHEREOF,** this Agreement has been duly executed as of the day and year specified below.

Agreed as of the 10th day of Sept. , 2013.

DEBTOR: COX MACHINE & TOOL                    SECURED PARTY:

By: X _Sheryl Cox_                            By: X _____

    SHERYL COX                                        Tetsuya Wada

Position: OWNER_____                        Position:  COO & VP

    Authorized Signing Officer

LOAN NO.: 40002378

## SCHEDULE "A"
## DESCRIPTION OF COLLATERAL

**(1) 1, MITSUBISHI WATER JET MDOEL MWX3-612** and any and all accessories, options and auxiliary equipment and machinery related thereto, including, but not limited to. the following items:

(2) 1, SL PRO2-60 PUMP W/ROUND CONN W/O STR KIT 460/60HP 90KPSI

(3) 1, ABRASIVE REGULATOR II ASSEMBLY FOR MWX3 & MWX4 SERIES

(4) 1, METAJET WJ SOFTWARE BEVEL UPGRADE

(5) 1, 80 HPA ALLUVIAL WATERJET ABRASIVES 55LBS BAG-2200LB TOTAL

(6) 1, STAND ALONE SUB-MERGED CUTTING BLADDER

(7) 1, INSTALL START-UP KIT FOR DX SL PRO2-60 PUMP

(8) 1, SPARE PARTS KIT DX SERIES SL PRO 2-60 PUMP

(9) 1, TOOL KIT DX SERIES SL PRO 2-60 PUMP

(10) 1, MWX3 90K START-UP KIT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MAC FUNDING CORPORATION,     )
                                   )
       Plaintiff,           )
                                   )     Case No. 16-cv-02490
       v.                 )
                                   )     Judge Edmond E. Chang
SHERYL ANN COX d/b/a          )
COX MACHINE & TOOL,         )     Magistrate Judge Michael T. Mason
                                   )
       Defendants.         )

## <u>CERTIFICATE OF SERVICE</u>

     I, Rein F. Krammer, do hereby state that I caused a copy of the **NOTICE OF MOTION** and

**MOTION TO REINSTATE AND TO ENTER JUDGMENT** to be served upon Sheryl Ann Cox

d/b/a Cox Machine & Tool, 5301 S.W. 25th Street, Oklahoma City, Oklahoma 73128 via Federal

Express, U.S. Mail and email transmission on the 19th day of September, 2017.


                                                 /s/ Rein F. Krammer


Rein F. Krammer, Esq.
MASUDA, FUNAI, EIFERT & MITCHELL, LTD.
203 North LaSalle Street, Suite 2500
Chicago, Illinois 60601-1262
(312) 245-7500

N:\SYS23\6309 MAC Funding\10198\Cert of Service.docx